## No. 10,113.

THE STATE EX REL. BARBER ASPHALT PAVING COMPANY VS. CITY OF NEW ORLEANS ET ALS.

Section 1 of Act 5 of the Extra Session of the Legislature of 1870 deprives the courts of this State of jurisdiction or authority to grant a writ of peremptory mandamus against the Comptroller or Treasurer of the city of New Orleans, the object of which is to enforce the payment of money claimed of the said city.

Act 109 of 1886 directs the performance of certain duties by the *City Council alone*, and imposes on the Comptroller and Treasurer the performance of none. Its provisions do not appertain to the executive department of the city government, but same are exclusively confirmed to the legislative department thereof.

Mandamus does not lie for the enforcement of that act.

Former opinion did not hold that Act No. 5 of 1870 barred the writ of mandamus as a remedy to enforce performance of specific duties imposed by subsequent legislation on the city of New Orleans, its Council, or any of its officers; but that the law invoked by relator did not impose the specific duties for the performance of which the mandamus was asked.

Held : the word "revenues," as used in Act 109 of 1886, necessarily means the budget estimate of revenues, because otherwise it would be a mathematical impossibility to frame the budget in accordance with the requirements of the city charter.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor*, J.

*Leovy & Blair* for Relator and Appellee.

*W. H. Rogers*, City Attorney, and *Nicholls & Carroll*, for Defendants and Appellants.

The opinion of the Court was delivered by

WATKINS, J. The relator seeks, by mandamus, to compel compliance with the provisions of Act 109 of 1886. To coerce the City

Comptroller to warrant on the City Treasurer in payment of the sum of $44,453 27, alleged to be due it for certain work done, under a contract with the city, in paving certain streets with sheet asphalt; to compel the City Treasurer to pay said warrant out of the 1887 revenue, and to require the City Council, Comptroller and Treasurer to reserve and set apart 20 per cent of the revenues and receipts of the city for the year 1887, "i. e., twenty cents out of every one hundred cents that are collected and paid into the treasury of the city, and to confine appropriations for the government of the city, for all other purposes, *except for permanent public improvements*, to 80 per cent of the *actually collected* revenues of the said city for the year 1887" and, further, to require the said Comptroller to warrant on and the said Treasurer to pay said warrants, in their favor, out of the fund thus created and held in reserve; and, further, to require each one and all of said persons and officers "to set aside for the reserve fund of 1887 all rights, sums, interest and credits received from miscellaneous or contingent sources, as provided in the said act."

The relator, also, seeks to restrain the city and said officers, by injunction, from paying out, for any other purpose than for permanent public improvements, more than 80 per cent of the revenues of the said city for the year 1887, as they are collected and paid into the city treasury, and said Comptroller from warranting on, and said Treasurer from paying out, the said reserve fund for any other purpose than for permanent public improvements.

To this petition the city of New Orleans tenders the following peremptory exceptions, viz:

1. That relator's petition discloses no cause of action.

2. That such remedy and relief as are herein sought are not warranted by law.

3. That the writ of injunction cannot issue in the premises, "as the proceedings are to compel the performance of a ministerial duty, and the injunction seeks to compel the performance of duties which are mandatory."

Reserving the benefit of these exceptions, the city, for answer, pleads the general issue, and specially denies the power of the court "to regulate the mode and manner of distributing the alimony allowed by law, which is fixed at the rate of ten mills upon the dollar of the revenues derived from taxation and other sources necessary for the government of said city, and which are fixed by law. That the relief sought by plaintiff would operate a complete cessation of the corporate business and make it impossible for the government to exist."

She alleges full compliance with all the laws of the State, and avers that she *has provided for a reserve fund and set the same aside, as under the law she was bound to do;* but that *said reserve has not yet been realized,* and there is no money with which to pay relator's claim.

On these issues and pleadings the cause went to trial, and there was a judgment making the mandamus peremptory as to all parties and the injunction perpetual; and from that decree the city has appealed.

We will first address our attentions to the respondent's exceptions :

There appears to be no dispute about the facts of this case. The relator made certain permanent public improvements for the city in the way of pavements on certain streets, consisting of sheet asphalt. This work was done in pursuance of a contract with the city, under the paving laws of the State, and in which the city agreed to pay a portion of the cost of construction. The amount of the relator's claim is not denied, and there is no complaint of the work done by the relator in pursuance of this contract. There is no claim made that any part of the relator's demand has been paid. The city's answer admits the force of the law, the provisions of which are sought to be enforced against her, but avers full compliance therewith, and " all laws of the State."

Under this state of facts has relator disclosed a cause of action.

Section 1 of Act No. 5 of the Extra Session of the Legislature of 1870 provides that " no court within the State shall have authority or jurisdiction to allow, hear, entertain or enforce any summary process, or proceeding, or writ, or order of mandamus, * * either against the Comptroller, * * the object of which shall be, either directly or indirectly, to obtain or compel said Comptroller * * to issue and deliver any order or warrants for payment of money, or against the Treasurer or any officer * * charged with the disbursement of the moneys of the city of New Orleans, the object of which shall be, either directly or indirectly, to enforce the payment of money claimed to be due from the city of New Orleans to any person, persons or corporations; but *all actions or proceedings* for the recovery of any sum of money claimed to be owing by the city of New Orleans shall be in the *ordinary form of action,* instituted against the city of New Orleans as a corporation, and not against any branch, department or officer thereof, and shall, in all respects, be conducted in the same manner as *other ordinary actions* "

This statute has received repeated interpretations by this Court and its predecessors, and it is still a law in force. The question is,

therefore, in what way is the relator's case taken out of its operation and effect? Or what plain, ministerial duty imposed by the act has the respondent city failed or refused to perform? Or what plain, ministerial duty is there invoked outside of and not inconsistent with that act which said respondent failed to perform?

The relator has not obtained a judgment against the city on its demands, and consequently is not entitled to the Comptroller's warrant on the Treasurer " *without any special appropriation* of money therefor by the Common Council," as provided in section 2 of said quoted act, and for the same reason its claim could not have been designated " in the annual budget for the payment of *judgments* against the city," as indicated in section three of that act.

The objects of this proceeding are three-fold, viz :

1. To compel the City Council, Comptroller and Treasurer to reserve and set apart 20 per cent of the revenues and receipts of the city for the year 1887 as a reserve fund for public improvements.

2. To compel the Comptroller to warrant on the Treasurer for the amount of their demand, said warrant to be made payable out of said reserve fund.

3. To compel the Treasurer to pay said warrant out of said reserve fund when it is presented. The duty, in the performance of which the said respondent city is alleged to be in default, is one not embraced in or covered by the quoted act, but is placed by the relator under Act 109 of 1886.

It is necessary here to examine this act and ascertain its scope and object, in order to determine the *character* of the duties, if any, that are imposed upon the respondents, and, further, to determine whether performance can be enforced by mandamus, as claimed by the relator.

The act purports to be an amendment of Sec. 66 of Act 20 of 1882, it being the city charter, and repeals a former amendment thereof, it being Act 88 of 1884. All of these acts appertain exclusively to the appropriation for, and the disbursement of, the respondent city's revenues.

Section 66 of Act 20 of 1882 provides that " the *Council* shall not, under any pretext whatever, *appropriate* any funds for the government of the corporation to the full extent of the *estimated* revenues, but shall reserve *twenty-five* per cent of said *estimated* revenues, which reserve, and all sums, rights, interests and credits received from miscellaneous or contingent sources, shall be *appropriated* by the Council for the purpose of public improvement, as herein provided for."

Act 88 of 1884 consists of a single section, and purports to be an

amendment of Section 66 of Act 20 of 1882, last above quoted ; but the amendment consists solely in reducing the amount to be reserved from 25 per cent to 10 per cent of the estimated revenues.

Act 109 of 1886 consists, also, of a single section, and repeals Act 88 of 1884, and amends Section 66 of Act 20 of 1882.   This amendment consists in these alterations only, viz:

1. The elimination of the word " estimated."

2. The reduction of 25 per cent to 20 per cent.

3. The interpolation of the word " permanent" before " public improvement."

It is worthy of special notice that each one of the acts quoted employs the *same* language in directing the performance of the duty that is therein imposed, viz : " the *City Council* shall not, under any pretext whatever, *appropriate* any funds," etc.   Neither one of those acts, in any manner, appertains to the *executive* department of the city government.   Sec. 12, *et seq.*, Act 20 of 1882:

" The executive power of the city of New Orleans shall be vested in one mayor, one treasurer, one comptroller, one commissioner of public works, and one commissioner of police and public buildings."   *Ibid.*

" The comptroller shall have a general superintendence of the fiscal affairs of the corporation.

" The comptroller shall not warrant upon the treasurer for the payment of any bill, requisition, claim, pay-roll or demand of any nature whatever, whether the same arise out of contracts or otherwise, except such bill, requisition, claim, pay-roll or demand is presented to said comptroller with the signature of the chairman of the finance committee of the council indorsed thereon in approval of the same," etc.   Sec. 21.

The duty of the treasurer is to receive and safely keep all moneys, assets, etc., belonging to the city, and to pay money on the warrants of the comptroller or other officer designated to act in his place, " and in no case shall the treasurer pay any claim whatever against the city except in the manner set forth."   Sec. 22.

" The *legislative power* of said corporation shall be vested in a council composed of thirty members," etc.   Sec. 2.

It is obvious, from a simple inspection of the acts cited and the one relied upon by the relator's counsel, that no duty is imposed upon either the Comptroller or Treasurer of the city, and that the duty that is imposed upon the legislative department of the city government is a *limitation upon its power to make appropriations* of the revenues of the

city as well as a requirement that it shall reserve 20 per cent " for the purpose of permanent public improvements."

Now if the construction of the law contended for by relator's counsel be conceded to be correct, there is an insuperable difficulty in the way of the remedy he seeks, and that is the absence of any provision appertaining to the *fiscal* affairs of the city, and the presence only of such provisions as relate to the " revenue and expenses " of the city government, and which are under the control of the City Council exclusively. Relator does not seek to control or supervise the manner in which the City Council has created the annual budget of expenses for the year 1887. It is not alleged that it is entitled to have the Council levy a special tax out of the proceeds of which its claim is to be paid by preference. It is not claimed that the rate of taxation should be increased in order that relator's claim be satisfied. Reduced to a last analysis, the contention of the relator is that the duty of the City Council is, under the law, to see to it that the Comptroller shall place in the reserve fund 20 per cent of the gross revenues of the city as they are collected, and warrant on said fund in its favor for the full amount of its demand.

We fail to discover in the law any warrant for this contention. Either the law is defective in not more specifically directing the mode in which this fund was to be created and reserved for " permanent public improvements " by the City Council, or they have been derelict in the enforcement of it by their failure to pass appropriate ordinances requiring the Comptroller to set apart and reserve the 20 per cent in such a manner as to make it available to public improvement creditors.

The one can be remedied by the Legislature and the other by the City Council. Each involves additional legislation. It is not our province to enlarge laws of the State or city so as to meet the exigencies of a particular cause, however meritorious. In view of the provisions of Act 5 of 1870, and the decisions of this Court interpreting it, we conclude that plaintiff's petition discloses no cause of action. 30 Ann. 78, 129, 710 ; 34 Ann. 875, State ex rel. Fernandez vs. Judge ; 35 Ann. 781, State ex rel. Klein & Co. vs. City ; 37 Ann. 13, State ex rel. Marchand vs. New Orleans.

It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed ; and it is further ordered, adjudged and decreed that the preliminary writ of mandamus be set aside, the injunction dissolved, and the relator's demands rejected, at his cost in both courts.

State ex rel. Asphalt Paving Company vs. City of New Orleans et als.

## ON APPLICATION FOR REHEARING.

FENNER, J. The brief for rehearing entirely misconstrues our original opinion in assuming that we held that Act No. 5 of 1870 operates as a bar to judicial enforcement, by mandamus and other appropriate remedies, of the performance of specific duties imposed by subsequent legislation upon the city of New Orleans, its Common Council, or any of its officers. The contrary has been too frequently affirmed by this Court to be longer a subject of controversy. State ex rel. Canal Co. vs. Pilsbury, 30 Ann. 129, 708; State ex rel. De Leon vs. City, 34 Ann. 480; State ex rel. Klein vs. City, 35 Ann. 781; State ex rel. Marchand vs. City, 37 Ann. 19; State ex rel. Bauman vs. City, 38 Ann. 43.

The city would indeed be an *imperium in imperio* if she were thus emancipated from judicial power to compel her to obey the specific mandates of her sovereign and creator, the State. We cited the Act of 1870 as barring the remedy of mandamus, except to enforce some particular specific duty imposed by a valid, subsisting law of the State, for the purpose of eliminating all questions except the single one whether the laws relied upon by relator did impose upon the defendants the particular duties set forth in the petition and of which the mandamus was invoked to compel the performance. We held that the said laws did not create such duties, and, therefore, the petition set forth no cause of action.

We do not hesitate, however, to say that relator's construction of Act 109 of 1886 is entirely incorrect in every respect.

That act was one amending section 66 of the city charter, and must be construed in connection with the other section of that instrument. Sections 64, 65 and 66 (as amended) read together as follows:

## "REVENUE AND EXPENSES."

" SEC. 64. That the council shall, once in twelve months, before fixing and deciding upon the amount of taxes and licenses to be assessed for the ensuing year, cause to be made out a detailed estimate, exhibiting the various items of liability and expenditures including the requisite amount for all expenses during said year, and shall cause the same to be published for at least ten days in the official journal of the city, and such rate of taxation as provided by law, on every hundred dollars of valuation, shall thereafter be fixed and assessed as, together with other revenues of the city, may be necessary to meet said estimated liabilities and expenditures. The adoption of said detailed estimates shall be considered as the appropriation of the

20

amount therein stated, and the comptroller shall not audit nor shall the treasurer draw or sign any checks upon the fiscal agent therefor of any claims, unless an appropriation therefor has been duly made in accordance with this act.

"Sec. 65. The council, in fixing the budget of revenue and expenses, as herein provided for, shall not consider and adopt as a revenue miscellaneous or contingent resources, and affix thereto either an arbitrary or nominal value or amount; but, whenever such resources are considered and adopted, they shall be estimated on a real and substantial basis, giving the source whence to be derived, a specific sum to be received from each item thereof and no more. The council is hereby prohibited from estimating for expenditures to be derived from any uncertain or indefinite source, cause or circumstance; but the council shall, by proper ordinances, provide for the receipt and disbursements of any sums of money, interests, rights or credits that may accrue to the corporation by behest, grant or any cause whatever; and all such sums, rights, interests or credits so received, shall be and are hereby appropriated for the purpose of public works and improvements, the manner and details of such appropriations to be ordered by the council.

"Sec. 66. The council shall not, under any pretext whatever, appropriate any funds for the government of the corporation to the full extent of the revenues, but shall reserve twenty per cent of said revenues, which reserve, and all sums, rights, interests and credits received from miscellaneous or contingent sources shall be appropriated by the council for the purpose of permanent public improvement, as herein provided for."

It is so evident to our minds that the term *revenues*, as used in Sec. 66, means the revenue fixed in the budget, or the budget estimates of revenues, that exegesis is difficult.

All three sections refer exclusively to the formation of the budget, which is the fixing in advance the *modus vivendi* of the city for the ensuing year, by a careful estimate of the expenditures and revenues. The Council is first required to make an estimate of expenditures, and, but for Sec. 66, it would not be allowed to levy a greater rate of taxation than would be *necessary*, with other revenues, to provide for said estimated expenditures. But Sec. 66 authorizes the raising of a revenue 20 per cent beyond the estimated expenses, and devotes the surplus as a reserve fund to be appropriated to public works and improvements. Hence, the city is authorized and is bound to estimate and to provide a revenue, 80 per cent of which, *no more or no less*,

is equal to her estimated expenditures, and this 80 *per cent* is irrevocably appropriated to these expenses. How would the city comply with these mathematical requirements if, as relator contends, she is authorized and required to appropriate 80 per cent, not of her estimated revenues, but of the revenues which shall be thereafter actually collected? How can she tell in advance what deficiency may result in the collection of her revenues? How is she to adjust her estimate of expenses and her corresponding provision of revenue in exact proportion or equality to an unknown quantity? The law did not contemplate or require any such impossibilities. It is plain the city must place on her budget, in exact figures, the liabilities and expenditures, and these must be just 80 per cent of the sum designated in amended Sec. 66 as "revenues." Unless some mathematical process can be invented whereby to calculate a percentage of an unascertained sum, relator's construction is impracticable, and we must treat the elision of the word "estimated" before "revenues," as used in previous statutes, as the simple correction of an useless tautology.

Rehearing refused.